Matthew T. Heartney (State Bar No. 123516)
Matthew.Heartney@aporter.com
Lawrence A. Cox (State Bar No. 076140)
Lawrence.Cox@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017-5844
Telephone: 213.243.4000
Facsimile: 213.243.4199

Stephanie B. Weirick (State Bar No. 204790)
Stephanie.Weirick@aporter.com
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004-1206

Attorneys for Defendants
BP Products North America Inc. and
Atlantic Richfield Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| CRESCENTA VALLEY WATER DISTRICT, <br><br> Plaintiff, <br><br> v. <br><br> EXXON MOBIL CORPORATION, et al., <br><br> Defendants. | Case No. CV 07-2630-JST (ANx) <br><br> **DEFENDANTS' OBJECTIONS TO SUPPLEMENTAL EXPERT REPORT OF R. KEVIN BERRYHILL, PE** <br><br> [Defendants' Motion *in Limine* No. 7 and *Daubert* Motion Re Damages] <br><br> Date:  July 9, 2012 <br> Time:  1:30 p.m. <br> Dept.:  10A |

In connection with Defendants' Motion *in Limine* No. 7 and *Daubert* Motion re Damages, Defendants[1] hereby submit their Objections to the Supplemental Expert Report of R. Kevin Berryhill, PE, served June 28, 2012, after all briefing on motions *in limine* was completed.

## I. ARGUMENT

Defendants established in prior briefing why the expert testimony and previous expert reports of R. Kevin Berryhill, PE ("Mr. Berryhill") should not be considered by the jury in this matter.  (*See* Dkt. Nos. 84 and 205.)  Mr. Berryhill's Supplemental Report was not served until after Defendants' Reply briefing was filed, and his "twelfth hour" submission simply provides additional grounds for sustaining Defendants' various objections to his expert testimony in any form.  Those additional grounds are further discussed below.

On the first page of his Supplemental Report, Mr. Berryhill states that he has "learned of additional information which renders certain portions of my prior reports incomplete or incorrect."  (Decl. of Lawrence A. Cox ("Cox Decl."), Ex. 7 ["Supplemental Report"] at 1.)  However, he does not disclose what this "additional information" is.  In addition to Mr. Berryhill's Supplemental Report, on June 28, 2012, CVWD served an Excel spreadsheet that "relates to Mr. Berryhill's Supplemental Report." (*See* Cox Decl., Ex. 8.)  The spreadsheet consists of 24 tabs, one of which is entitled "run011curve fit 2011-2059."  Given the references in the Supplemental Report to the modeling work of Dr. Steven Wheatcraft, Defendants assumed that the "run011" tab incorporates data from one of the supplemental computer runs of Dr. Wheatcraft's model that CVWD produced to Defendants in October 2011 with Dr. Wheatcraft's own supplemental report (which, for the reasons

---

[1] Atlantic Richfield Company, BP Products North America Inc., Chevron U.S.A. Inc, ChevronTexaco Corporation, Union Oil Company of California, Unocal Corporation, ConocoPhillips Company, Lyondell Chemical Company, Shell Oil Company, Equilon Enterprises LLC, Texaco Refining & Marketing Company, Ultramar, Inc., Valero Refining Company -- California, and Valero Marketing and Supply Company.

detailed in Defendants' MIL Nos. 1 and 16, should itself be excluded).  Thus, the reasons supporting exclusion of Dr. Wheatcraft's supplemental report also support excluding Mr. Berryhill's Supplemental Report.  Moreover, CVWD should have sought leave to serve Mr. Berryhill's Supplemental Report long ago.[2]  CVWD's inexcusable delay here provides yet another reason for striking Mr. Berryhill's testimony.

Further, Defendants have not yet been able to confirm precisely where "run011 curve fit 2011-2059" came from.  In fact, it does not appear to be consistent with any prior model runs Defendants have received from Dr. Wheatcraft.  (*See* Cox Decl. ¶ 2, Ex. 1 (comparing the "run011 curve fit 2011-2059" data with previously received Wheatcraft data for CVWD Wells 1 and 14).)  To the extent the Supplemental Report is based on data that has not been provided to Defendants, it should be stricken for that reason as well.  Therefore, Mr. Berryhill's Supplemental Report is properly stricken on various procedural grounds.

More fundamentally, Mr. Berryhill's conclusions, like those of Dr. Wheatcraft, will not withstand scrutiny under *Daubert* because Mr. Berryhill's damages calculations *for 2011 and 2012* ignore the absence of any need to treat Plaintiffs' well system with Granulated Activated Carbon ("GAC") to remove MTBE from the water CVWD serves its customers.

---

[2] As discussed in more detail in Defendants' Reply (Dkt. No. 205, at pp. 4-7), in the Spring of 2011 Special Master Warner gave CVWD the opportunity to serve supplemental reports for Dr. Wheatcraft and Mr. Berryhill; CVWD did not serve Dr. Wheatcraft's supplemental report until October 5, 2011.  Nor did CVWD serve Mr. Berryhill's Supplemental Report within 30 days of Dr. Wheatcraft's supplemental report, the time period CVWD itself suggested, or in the months after Mr. Axline's November 2011 representations to Defendants and the Court that the Supplemental Report would be provided.  There was no Supplemental Report served when Defendants filed Motion *in Limine* No. 7 on March 5, 2012; when the parties met and conferred on motions *in limine* throughout April and May 2012; or when CVWD filed its opposition on June 15, 2012.

As one such customer is reported by the local press to have stated during CVWD's efforts to obtain funding from the State of California to treat very low levels of MTBE in Well 5:

> ***"We're cleaning clean water for $1,000,000."***

(Cox Decl., Ex. 2 at 1.)  This article also refers to CVWD's statements that it "suspect[ed] MTBE levels will spike once the well is turned on again, but acknowledged there is no way to know for sure." (*Id*.)  Of course, the five-day pump test conducted for Well 5 from February 9 to February 14, 2011 to determine if elevated MTBE detections in that well would reoccur resulted in levels which the California Department of Public Health ("DPH") referred to as "very low, ranging from non-detect to 0.28 ug/L which is well below the primary and secondary MCLs of 13 ug/L and 5 ug/L for MTBE."  (Cox Decl., Ex. 3 at 1.)

Significantly, in approving Well 5's return to service *without treatment*, DPH requested that CVWD begin testing for MTBE at the "Paschall Blending Station where imported MWD water is added to blend with the District's groundwater before the water enters the Oak Creek Reservoir" and is served to customers. (*Id*.)  Since testing of MTBE levels at the Paschall Blending Station commenced, CVWD has extracted a total of 74 water samples from that location; 69 of those samples tested "ND," or non-detect for MTBE.  (*See* Cox Decl., Ex. 4.)  Five samples purportedly detected MTBE at 0.13 ppb, 0.12 ppb, 0.11 ppb, 0.11 ppb and 0.15 ppb, respectively.  (*Id.*)  **These repeated non-detect and sporadic parts per trillion "detections" confirm that the water CVWD is serving its customers is already well below even the most aggressive Treatment Goal in Mr. Berryhill's expert submissions -- 0.2 ppb.**

Nevertheless, Mr. Berryhill's Supplemental Report chooses to adopt modeling results for 2011 and 2012 that bear no relationship whatsoever to the real world.  The data used in Mr. Berryhill's Supplemental Report and the real-life data from MTBE testing in 2011 and 2012 are reflected in charts entitled "Damages for Treatment of

Clean Water (2011)" and "Damages for Treatment of Clean Water (2012)." (Cox Decl., Exs. 5 & 6.) Analysis of these data confirms, for example, that the maximum amount of MTBE reported in roughly half of CVWD's wells during 2011 *was below 0.2 ppb, with no CVWD well reporting MTBE above 1.0 ppb.* (Cox Decl., Ex. 5.) Mr. Berryhill's Supplemental Report, however, relies upon model results in which *every CVWD Well had MTBE detections above 1.0 ppb and half were modeled with contamination at or above California's 5 ppb taste and odor MCL.* (*Id.*)

Mr. Berryhill's Supplemental Report then takes a further step "through the looking glass" by suggesting that a GAC Treatment Plant should have been constructed in 2011 at one of three sites, and damages should be awarded CVWD based upon the consumption of hundreds of thousands of pounds of carbon purportedly used to treat CVWD's admittedly clean water at this non-existent treatment facility during 2011. But CVWD did not construct a GAC treatment plant and did not use carbon to treat MTBE in groundwater in 2011. Such chicanery results in improper 2011 damages calculated by Mr. Berryhill ranging from $1,197,254 to $4,286,541.[3] (Cox Decl., Ex. 5.) Thus, Mr. Berryhill's Supplemental Report is precisely the type of sophistry that should be excluded from consideration by the jury in this case. *Abarca v. Franklin Cnty. Water Dist.*, 761 F. Supp. 2d 1007, 1022 (E.D. Cal. 2011) ("nothing in either *Daubert* or the Federal Rules of Evidence requires the admission of opinion evidence connected to existing data 'only by the *ipse dixit* of the expert'" (citing *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997)).

## II. CONCLUSION

For these additional reasons, Defendants respectfully request that this Court sustain their objections to Mr. Berryhill's expert reports and testimony, including his untimely Supplemental Report, and grant their Motion *in Limine* No. 7 and *Daubert*

---

[3] Mr. Berryhill's conclusions for 2012 are similar, and would add another $72,293 - $205,222 to his damage calculations for January through May of this year alone. (Cox Decl., Ex. 6.)

Motion Re Damages as to the entirely of Mr. Berryhill's expert testimony in this matter.

Dated: July 3, 2012                    ARNOLD & PORTER LLP

                                       By:  /s/ Lawrence A. Cox
                                            Lawrence A. Cox
                                            Attorneys for Defendants
                                            BP Products North America Inc. and
                                            Atlantic Richfield Company
                                            Signed with Permission on Behalf of
                                            Parties and Counsel in Footnote 4[4]

---

[4] Signed with permission on behalf of the following counsel and parties:

| | |
|---|---|
| KING & SPALDING LLP<br>Charles C. Correll, Jr.<br>Attorneys for Defendants UNOCAL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, CHEVRON U.S.A. INC., and CHEVRONTEXACO CORPORATION | SEDGWICK LLP<br>Richard E. Wallace, Jr.<br>Peter C. Condron<br>Attorneys for Defendants SHELL OIL COMPANY and EQUILON ENTERPRISES LLC and TEXACO REFINING & MARKETING INC. |
| BLANK ROME LLP<br>Alan J. Hoffman<br>Jeffrey S. Moller<br>John DiChello<br>Attorneys for Defendant LYONDELL CHEMICAL COMPANY (formerly known as ARCO CHEMICAL COMPANY) | BRACEWELL & GIULIANI LLP<br>M. Coy Connelly<br>Amy E. Parker<br>Attorneys for Defendants ULTRAMAR, INC., VALERO REFINING COMPANY – CALIFORNIA, and VALERO MARKETING AND SUPPLY COMPANY |
| LATHAM & WATKINS LLP<br>Jon D. Anderson<br>Attorneys for Defendant CONOCOPHILLIPS COMPANY | |


**CERTIFICATE OF SERVICE**

I, William Costley, hereby certify that on this 3rd day of July 2012, a true and correct copy of the foregoing **DEFENDANTS' OBJECTION TO SUPPLEMENTAL EXPERT REPORT OF R. KEVIN BERRYHILL, PE [Defendants' Motion *in Limine* No. 7 and *Daubert* Motion Re Damages]** was served on all parties via LexisNexis File and Serve.

/s/
William Costley